UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                     :

DANIEL DIAZ,                           :

                                       :

               Plaintiff,           :

                                       :           25-cv-6868 (LJL)

       -v-                      :

                                       :        MEMORANDUM &
DORA MAAR USA INC.,          :           ORDER

                                       :

               Defendant.         :

                                       :

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/31/2026

LEWIS J. LIMAN, United States District Judge:

Plaintiff Daniel Diaz ("Plaintiff") moves for a default judgment pursuant to Fed. R. Civ. P. 55(b)(2). Dkt. No. 14. The motion is unopposed. For the following reasons, Plaintiff's motion is granted in part and denied in part. Plaintiff is awarded damages in the amount of $33,401.10.

## BACKGROUND

The Court assumes the truth of the well-pleaded allegations of the complaint for purposes of the motion for a default judgment. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). The Court also considers "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The following facts are drawn from the Complaint, attached Exhibits, and the Amended Declaration in Support of Damages ("Declaration of Damages"), which are undisputed. Dkt. Nos. 1, 24.

Plaintiff is a citizen of Florida. Dkt. No. 1. Defendant is a corporation organized under the laws of Delaware, with its principal place of business in New York, New York. Dkt. No. 1.

On May 6, 2023, Plaintiff and Defendant entered into a Draw Promissory Note (the "Promissory Note"). Dkt. No. 1-1. The Promissory Note provides for the loan by Plaintiff to Defendant of $150,000 (the "Principal Amount"). *Id.* Pursuant to the terms of the Promissory Note, Defendant agreed to repay the sum of the "Principal Amount" and interest on the unpaid principal on or before November 5, 2024 ("Maturity Date"). *Id.* The Promissory Note specifies that "interest on the aggregate unpaid principal amount of all Advances shall be payable as per Exhibit B." *Id.* Exhibit B, the repayment schedule, specifies the amount to be paid in consecutive monthly installments by pre-specified dates. *Id.* at 8.[1] The Promissory Note sets forth the interest rate applicable absent default and the interest rate applicable upon default. However, in each instance, it sets forth two different rates. It states that the interest rate to be applied absent default is "nine percent (12%) per annum" and the interest rate in the event of default is "twelve percent (14%) per annum." *Id.* at 2. The Promissory Note does contain any rule that would dictate whether the applicable rate is that expressed in words or numbers and counsel has not acknowledged the inconsistency much less provided evidence regarding it. The Court is left without basis what interest rate if any to apply.[2] Section 5 of the Promissory Note defines an "Event of Default," in relevant part, as follows:

(a) Each of the following shall constitute an "Event of Default":

---

[1] Citations to this docket entry use ECF pagination.

[2] Adding together the 18 payments contained in the "repayment schedule" in Exhibit B totals to $171,498.60. Although that might be assumed to reflect payment of the principal plus one of the two interest rates contained in the Promissory Note, it in fact reflects the repayment schedule outlined in a distinct document submitted by Plaintiff, the American Express Business Line of Credit Loan Agreement and Personal Guarantee. Dkt. No. 17-2. In other words, it appears that a borrower, "Tech Savers, LLC," took out a $151,000 dollar loan from American Express to be repaid over 18 months with an interest rate of 15.89%, and then in turn used that money to make a Loan to defendant at a different interest rate. That AmEx loan contains a repayment schedule that is identical to that contained in the Promissory Note. *Id.* at 3. Plaintiff provides no other calculation of the 18 monthly payments to be made by Defendant on the basis of 9/12% interest as outlined in the Promissory Note.

> > (i) Failure to Pay. Borrower shall fail to pay when due any principal hereof or any interest hereon when due;
>
> > . . .
>
> > (b) Upon the occurrence of an Event of Default, the Default Rate shall be in effect for all periods from and after the occurrence of the default giving rise to such Event of Default until this Note is paid in full.  Interest calculated at the Default Rate shall be deemed part of the outstanding Obligations due and payable pursuant to this Note.

Dkt. No. 1-1 at 3.

According to the Complaint and Declaration of Damages, Defendant made payments on the Promissory Note from May 2023 through May 2024.  Dkt. No. 1 ¶ 15; Dkt. No. 24 ¶ 8. During this period, Plaintiff states that interest accrued on the Principal Amount at a rate of 12% per annum, totaling $18,000 ($1,500 per month).  Dkt. No. 24 ¶ 7.  As of Defendant's final payment, the outstanding balance, according to that calculation, stood at $96,706.00.  *Id.* ¶ 9. Plaintiff alleges that Defendant's failure to pay the amount due as of June of 2024 constitutes an Event of Default.  *Id.* ¶ 10.  Following that default, Plaintiff alleges that the default interest that has accrued is $20,398.40.  *Id.* ¶ 11.  As a result, Plaintiff seeks damages in the amount of the unpaid principal in addition to the default interest at a rate of 14% per annum on the unpaid principal.  *Id.* ¶ 12.  In total, Plaintiff requests $117,104.50 as damages resulting from Defendant's breach.  *Id.* ¶ 12.[3]

## PROCEDURAL HISTORY

Plaintiff filed his complaint on August 19, 2025, asserting claims for (1) breach of

---

[3] Plaintiff previously might have been understood to be seeking that value, $117,104.50, "plus" further interest "at a rate of twelve percent (12%) per annum from November 5, 2024 to present by Defendant."  Dkt. No. 17 ¶ 11.  However, in Plaintiff's final Amended Declaration in Support of Damages, he clarifies that he seeks just the "total balance" of $117,104.50.  Dkt. No. 24 ¶ 12.

contract and (2) transfer void under Uniform Voidable Transactions Act ("UVTA").  Dkt. No. 1.

Defendant was served with summons and complaint on September 2, 2025.  Dkt. No. 5.  Proof of

Service was filed.  Dkt. No. 5.  On December 3, 2025, the Clerk of Court issued a certificate of

default against Defendant.  Dkt. No. 12.  Plaintiff filed this motion for default judgment on

December 17, 2025, and served Defendant with the notice of motion for default judgment.  Dkt.

Nos. 14, 15.  He also submitted a declaration of counsel and a statement of damages.  Dkt. Nos.

16, 20.  The Court held a telephonic hearing on Plaintiff's motion on January 29, 2026, which

was attended by Plaintiff.  Defendant was served with papers noticing the hearing but did not

attend.  Following that hearing, Plaintiff submitted an Amended Statement of Damages.  Dkt.

No. 24.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the

entry of judgment against a party who fails to defend: the entry of a default, and the entry of a

default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a

defendant has, through its failure to defend the action, admitted liability to the plaintiff."

*Mickalis Pawn Shop,* 645 F.3d at 128; *see* Fed. R. Civ. P. 55(a).  The second step, entry of a

default judgment, "converts the defendant's admission of liability into a final judgment that

terminates the litigation and awards the plaintiff any relief to which the court decides it is

entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see*

*also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate

depends upon whether the well-pleaded allegations against the defaulting party establish liability

as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.  In evaluating those allegations,

the Court considers "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111.

The "district court need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop*, 645 F.3d at 137 (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Rather, the Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in [*Bell Atlantic Corp. v. Twombly*] and [*Ashcroft v. Iqbal*], aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).

A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [her] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd,* 691 F. App'x 8 (2d Cir. 2017) (summary order). To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes

no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

## DISCUSSION

Plaintiff's complaint states two causes of action: (1) breach of contract (2) a violation of the UVTA. Dkt. No. 1. The Court will consider in turn whether the well-pleaded allegations establish Defendants' liability as a matter of law for each violation and, if so, what the appropriate award of damages is. The Court will then consider the request for attorneys' fees and costs.

### I. Jurisdiction

The Court begins by assuring itself of its jurisdiction. *See Select Harvest USA LLC v. Indian Overseas Bank*, 2023 WL 2664079, at *7 (S.D.N.Y. Mar. 28, 2023); *Mockingbird 38, LLC v. Int'l Bus. Times, Inc.*, 2022 WL 154137, at *3 (S.D.N.Y. Jan. 18, 2022).

The Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Diversity jurisdiction requires (1) "complete diversity" among the parties, meaning "each plaintiff's citizenship must be different from the citizenship of each defendant," *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009); and (2) an amount in controversy in excess of $75,000, i.e., that there exists a "reasonable probability" that the claims are in excess of the sum or value of $75,000, *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). Plaintiff is a citizen of Florida and Defendant is a Delaware corporation with its principal place of business in New York, Dkt. No. 1 ¶¶ 5–6, and Plaintiff requests $117,104.50, Dkt. No. 24 ¶ 12. Accordingly, the Court determines that the requirements for federal subject matter jurisdiction are established.

6

The Court also has personal jurisdiction over Defendant.[4]  The promissory note contains a forum selection clause specifying venue and personal jurisdiction in the courts of New York. Dkt. No. 1-1 at 5.  "Where an agreement contains a valid and enforceable forum selection clause . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process" as to the parties bound by that agreement. *Export-Import Bank of U.S. v. Hi–Films S.A. de C.V.*, 2010 WL 3743826, at \*4 (S.D.N.Y. Sept. 24, 2010); *see Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F.Supp.2d 328, 333 (S.D.N.Y.2005) ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue.").  Rather, assenting to "[a]n enforceable forum selection clause amounts to consent to personal jurisdiction." *Farrell Lines Inc. v. Columbus Cello–Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997).  The Court may therefore properly exercise personal jurisdiction over the Defendant.[5]

## II. Liability

### A. Breach of Contract

Accepting the well-pleaded allegations of the complaint as true, Plaintiff has stated facts sufficient to establish all of the elements of its claim for breach of contract.  "To prevail on a breach-of-contract claim in New York, a plaintiff must prove: '(1) the existence of a contract, (2)

---

[4] A court is not required to determine it has personal jurisdiction over a defendant before entering a default judgment, particularly in cases where the question is close, but does so here as a matter of prudence because a judgment entered without personal jurisdiction is void.  *See Everything Yogurt Brands, LLC v. Bianco*, 2024 WL 3497757, at \*2 (S.D.N.Y. July 22, 2024) (citing *CKR Law LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp.3d 474, 479 (S.D.N.Y. 2021) and *Kaplan v. Hezbollah*, 2022 WL 2207263, at \*3 (E.D.N.Y. 2022)).

[5] Additionally, as a company with its principal place of business in New York, Defendant Dora Maar USA is subject to general personal jurisdiction in the state of New York.  See *Arzu v. Am. Airlines*, 690 F. Supp. 3d 242, 247 (2023) (under both CPLR 311 and the due process clause, a corporation "can be subject to general jurisdiction" in the state where it has its "principal place of business.") (internal citations and quotation marks omitted).

performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach.'" *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) (quoting *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*, 156 Fed. App'x 349, 350–51 (2d Cir. 2005) (summary order)).  In addition, "New York law and the *Twombly-Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached." *Spinelli v. NFL*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015); *see Phoenix Fashion, Inc. v. Saadia Grp. LLC*, 2024 WL 4493716, at *3 (S.D.N.Y. Oct. 15, 2024).

The evidence in the record supports a finding that Defendant breached the Agreement with Plaintiff: (i) Plaintiff has alleged the existence of a contract between the parties in the form of the Promissory Note, Dkt. No. 1-1; (ii) Plaintiff performed his obligations under the contract, providing $150,000 to the Defendant, Dkt. No. 1 ¶ 2; (iii) Defendant failed to meet its obligations under the agreement by ceasing to make monthly payments in accordance with the agreements' terms, *Id.* ¶ 15 ; and (iv) Plaintiff suffered damages as a result, Dkt. No. 24.  At the default judgment stage, these allegations are sufficient to establish Plaintiff's liability for breach of contract.

### B.  UVTA

The Complaint also asserts that Defendant violated the UVTA by transferring assets "in an attempt to not pay the money rightfully owed to Plaintiff." Dkt. No. 1 ¶ 4.  Section 279 of the UVTA provides that "[a] claim for relief in the nature of a claim for relief under this article is governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred."  N.Y. Debt. & Cred. Law § 279(b).  "A debtor that is an organization and has only one place of business is located at its place of business," and "[a]

debtor that is an organization and has more than one place of business is located at its chief executive office." *Id.* § 279(a)(1)–(2).

The UVTA "provide[s] creditors with a cause of action to invalidate any transfer that a debtor made with the intent to defraud creditors. Creditors may also typically invoke these laws to void 'constructive' fraudulent transfers—that is, transfers made without an actual intent to defraud." *United States v. Miller*, 604 U.S. 518, 524 (2025). Pursuant to the UVTA, "defrauded creditors may have their debtor's fraudulent transactions voided to the extent necessary to satisfy the creditor's claim." 50 A.L.R. 7th Art. 5 (2020); *see Weihai Lianqiao Int'l Coop Grp. Co. v. A Base IX Co. LLC*, 799 F. Supp. 3d 195, 253 (S.D.N.Y. 2025). New York's DCL § 273(a) provides that:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.Y. Debt. & Cred. Law § 273(a).

In determining whether the transferor had the requisite intent under DCL § 273(a)(1), courts consider a number of factors, which codify common law "badges of fraud," including whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed

or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.  N.Y. Debt. & Cred. Law § 273(b)(1)–(11); *see Weihai Lianqiao Int'l*, 799 F. Supp. at 253–54.

As pleaded, Plaintiff's allegations sound more in a claim for actual intent to defraud under § 273(a)(1) than a claim for constructive fraud under § 273(a)(2).  The complaint alleges only that Plaintiff made repeated demands to Defendant to pay Plaintiff the outstanding amount, and that "on or about July 2024, Plaintiff also requested updates on the planned sale of Defendant's non-inventory assets."  Dkt. No. 1 ¶ 20.  Plaintiff further alleges that Defendant "used the non-inventory assets to capitalize a new company co-founded by Defendant's Founder and Chief Executive Office, Lauren Wilson."  *Id.* ¶ 22.  According to the Complaint, "Defendant knew it would incur debts beyond its ability to pay when it made the transfer" and "intended to hinder, delay, or defraud Plaintiff in violation of the UVTA."  *Id.* ¶¶ 36, 41.  In support of Plaintiff's fraudulent conveyance claim, the Complaint essentially restates several of the factors that § 273(b) enumerates as evidence of actual intent.  *Id.* ¶ 42 (alleging that Defendant intended to hinder, delay, or defraud Plaintiff by "a. removing non-inventory assets to an insider—family member or entity controlled by Defendant—immediately after Defendant's default; b. concealing or misrepresenting the existence of the transfers to Plaintiff; c. being insolvent or rendered

10

insolvent by the transfers; and d. being sued or threatened with suit by Plaintiff at the time of the Transfers").

Plaintiff's allegations are insufficient to state a claim under the UVTA. The allegations are conclusory, and do not contain sufficient facts, accepted as true, to state a plausible claim for relief. To state a claim, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, fraudulent transfer claims must be plead with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. *See Goldberg v. Gray*, 2016 WL 4099189, at *14 (N.D.N.Y. Aug. 2, 2016) ("To adequately plead a claim to recover actual fraudulent transfers under the NYDCL, the complaint must state with particularity the factual circumstances constituting fraud under Rule 9(b)."); *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 106–07 (S.D.N.Y. 2004) (applying the pleading requirement of 9(b) to actual fraud claims under the NYCDL); *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir. 1987). To plead with particularity, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). The Complaint fails to allege facts with sufficient detail and particularity to plead actual intent to hinder, delay or defraud as required by § 273(a)(1).

If Plaintiff has identified a transfer he believes to be improper, and the entity that purportedly received that transfer, there are many procedures through which he may seek assets

with a judgment against the Defendant.  First, "[a] judgment creditor may make a fraudulent conveyance claim in order to set aside a transfer of the judgment debtor's assets by way of a plenary action brought against the recipient of the assets."  *Koehler v. Bank of Bermuda Ltd.*, 2002 WL 1766444, at *4 (S.D.N.Y. July 31, 2002) (citing 54 N.Y. Jur.2d Enforcement and Execution of Judgments § 257 ("Issue of Fraudulent Conveyance")).  In addition, as this Court has previously explained, "CPLR article 52 sets forth procedures for the enforcement of money judgments in New York, which may include the imposition of a restraining notice against a judgment debtor's bank account to secure funds for later transfer to the judgment creditor through a sheriff's execution or turnover proceeding."  *Freeman v. Giuliani*, 2024 WL 4467191, at *2 (S.D.N.Y. Oct. 10, 2024) (quoting *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 223 (N.Y. 2013)).

Furthermore, to the extent Plaintiff has difficulty ascertaining the location of those assets, "broad post-judgment discovery in the aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014).  "If the judgment debtor or third party does not respond to discovery demands, a plaintiff is entitled to move for an order compelling a response, as permitted under Rules 5(b), 30(a), and 37, after a good faith attempt to confer with the party failing to comply." *Id.*  If the judgment debtor fails to comply with the order, he can be held in contempt. *See Benthos Master Fund, Ltd. v. Etra*, 2022 WL 17819592, at *19 (S.D.N.Y. Dec. 20, 2022), *modified*, 2023 WL 4350594 (S.D.N.Y. July 5, 2023); *Wistron NeWeb Corp. v. Genesis Networks Telecom Servs.*, LLC, 2024 WL 342521, at *1 (S.D.N.Y. Jan. 30, 2024).

### III. Damages

"Under New York law, damages for breach of contract should put the plaintiff in the

same economic position he would have occupied had the breaching party performed the contract." *LG Cap. Funding, LLC v. Cardiogenics Holdings, Inc.*, 787 F. App'x 2, 3 (2d Cir. 2019) (summary order) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)); *see also Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 261 (S.D.N.Y. 2005) (damages for breach of contract may not "put the non-breaching party in a *better* financial position than they would have occupied but for the breach"). "It is well settled that in breach of contract actions the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 886 N.E.2d 127, 130 (N.Y. 2008) (citation omitted). "Special, or consequential damages, which do not so directly flow from the breach, are also recoverable in limited circumstances." *Assure Glob., LLC v. Anderson*, 763 F. Supp. 3d 476, 488–89 (S.D.N.Y. 2025) (citation omitted).

To obtain damages in the context of a default judgment, "[o]nce liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty." *Reisman v. Ne. Power & Gas LLC*, 720 F. Supp. 3d 279, 291 (S.D.N.Y. 2024). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). A district court cannot "just accept [the plaintiff's] statement of damages" at "face value" without satisfying "the court's obligation to ensure that the damages were appropriate." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Lenard*, 889 F. Supp. 2d at 527. "New York law also entitles prevailing

13

plaintiffs to prejudgment interest on any sum awarded for breach of contract." *LG Cap. Funding, LLC v. M Line Holdings, Inc.*, 422 F. Supp. 3d 739, 756 (E.D.N.Y. 2018) (internal quotation omitted).  "Where the parties stipulate to an interest rate, prejudgment interest is calculated at the contract rate, until the amount owed under the contract merges into a judgment." *Id.*; *see also NML Cap. v. Republic of Argentina*, 621 F.3d 230, 240 (2d Cir. 2010) ("[W]hen a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in [C.P.L.R.] 5004, governs until payment of the principal or until the contract is merged in a judgment." (internal quotations omitted)), *certified question accepted*, 936 N.E.2d 455 (N.Y. 2010), *and certified question answered*, 952 N.E.2d 482, 489 (N.Y. 2011).

In the context of a breach of contract action, Plaintiff's declaration that Defendant stopped making the required payments following the payment in May 2024, thereby defaulting on the Promissory Note, is sufficient to substantiate a claim for damages as to the outstanding balance.  Dkt. No. 24 ¶ 11.  However, Plaintiff has not demonstrated with adequate evidence his entitlement to either the full Principal Balance remaining on the loan that he seeks, nor the associated Default Interest (together, the "Total Balance").  *See OFC Freight (NY) Inc. v. Storlie Furniture Distribs., LLC*, 2025 WL 1603925, at *4 (S.D.N.Y. June 6, 2025).  As to the total balance, Plaintiff affirmatively alleges that "Defendant ceased its payments on the Principal Balance since June 2024."  Dkt. No. 24 ¶ 11.  Adding together the payments that, per Plaintiff, Defendant *did* make between June 2023 and May 2024 (following the payments in Schedule B), Defendant paid Plaintiff $116,598.90 before defaulting.  Dkt. No. 1-1 at 8.  Plaintiff does not explain how, even accounting for what he alleged is the addition of $18,000 in interest that accrued during that period, he has calculated an outstanding balance of $96,706.00 at that time.

Dkt. No. 24 ¶ 9.  Nor has Plaintiff supported why it is in fact 12% interest, and not 9%, both of which are in the Promissory Note, that applied.  Plaintiff has not adequately alleged that the repayment schedule included in Exhibit B accurately reflects the principal plus interest owed by the Defendant.  As noted, that schedule of payments is lifted directly from the American Express Business Line of Credit Loan Agreement and Personal Guarantee attached as Exhibit 2 to the Statement of Damages at Dkt. No. 17.  *See* Dkt. No. 17-2 at 2 (the "Amex Loan Agreement").  That loan, for $151,000 (not $150,000), was taken out at an annual interest rate of 15.89%.  *Id.*  That interest rate, applied to the $151,000, is $20,398.50—for a total repayment value of $171,498.50.  The repayment schedule included therein, which mirrors exactly that attached as Exhibit B to the Promissory Note, is calculated on the basis of repaying the $151,000 loan at the annual rate of 15.89% over the course of 18 months.  *Id.* at 3.  Therefore, the Court cannot determine, based on the papers, what the remaining balance should be with interest.  The only information that is clear based on the motion and associated documents is that the original loan amount was $150,000, and that at the time of default Plaintiff had made $116,598.90 in payments.  Defendant is accordingly entitled to damages in the amount of $33,401.10 as the remaining balance on the principal after subtracting the payments made by Defendant.

For the same reasons, Plaintiff has not adequately supported the Default Interest that it seeks.  As explained, Defendant seemingly arrived at that value by taking it from the AmEx Loan Agreement, where it represented the "Loan Fees" to be paid on the $151,000 principal at an interest rate of 15.89%.  Plaintiff has offered no independent calculation of the fees they might have accrued on the basis of the loan to Defendant—nor is it clear that they would be able to in light of the lack of clarify in the Promissory Note as to the applicable rate.

**CONCLUSION**

For the forgoing reasons, the Court GRANTS in part and DENIES in part Diaz's motion for default judgment as to liability.  Plaintiff is entitled to a default judgment against Defendant Dora Maar as to Plaintiff's breach of contract claim.  The Court denies the motion for a default judgment as to its UVTA claim.  On damages, Plaintiff has substantiated an entitlement to $33,401.10 as the remaining portion of the principal balance of the loan due to Plaintiff.  Plaintiff was already given an opportunity by the Court to supplement the evidence as to damages.  Dkt. No. 23.  Plaintiff shall inform the Court by letter dated no later than April 10, 2026, and served upon Defendant, whether Plaintiff elects to dismiss the UVTA claim and have the Court enter default judgment.  Alternatively, Plaintiff may amend the complaint to assert a UVTA claim no later than April 15, 2026.  The Clerk of Court is respectfully requested to close Dkt. No. 14.

SO ORDERED.

Dated: March 31, 2026
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge

16